IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

```
TYRONE SHELTON,              )
     Plaintiff,              )    Civil Action No. 7:04-cv-00228
                             )
v.                           )    MEMORANDUM OPINION
                             )
FRED SCHILLING, et al.,      )    By: Hon. James C. Turk
     Defendant(s).           )    Senior United States District Judge
```

Plaintiff Tyrone Shelton, a Virginia inmate proceeding pro se and incarcerated at Red Onion State Prison, brings this 42 U.S.C. § 1983 action alleging Eighth Amendment violations that various correctional officers and medical staff exhibited deliberate indifference to his serious medical needs by confiscating his hard orthopedic boots and denying him wrist and back braces; used excessive force upon him; and failed to protect him from assault by two guards. Shelton seeks monetary damages. This matter is before the court on defendants' motions for summary judgment. The court issued Roseboro notices to Shelton following each filing of defendants' motions for summary judgment, and Shelton filed responses to each of those motions for summary judgment.[1] Therefore, this matter is now ripe for disposition by the court.

I.

Shelton alleges the following facts to support his deliberate indifference claims. On December 6, 2003, several months after Shelton arrived at Red Onion State Prison with his hard

---

[1]By order of July 26, 2004 (Docket entry 20), the court sua sponte dismissed all claims against defendants Vicky Phipps, J. Oakes, P. Harless, John D. McChesney, Cari Mikalson, and L. Mullins; dismissed all claims alleging various defendants denied Shelton the use of a rigid writing pen, denied him due process during disciplinary proceedings—from which he also claimed he "lucidly suffered from emotional diarrhea" as a result, and wrongfully disseminated or received his medical records, pursuant to 28 U.S.C. § 1915A for failure to state a claim; and dismissed all claims raised under state law, pursuant to 28 U.S.C. § 1367(c).

orthopedic boots,[2] Warden D.A. Braxton had security staff confiscate Shelton's boots. Shelton filed grievances informing officials of his orthopedic deformities and asking that his boots be returned.[3] Dr. D.O. Paul Greene, institutional physician, told Shelton that he needed the orthopedic boots to prevent the foot conditions from progressing. However, Greene refused to interfere with Braxton's decision to confiscate the boots. Shelton also informed Schilling, Virginia Department of Corrections Health Services Director, of his need for orthopedic boots. Schilling refused to interfere with Braxton's decision. Shelton states that as a result of not wearing his orthopedic boots, he is suffering from pain in his right and left ankle joints and toes and that he has developed calluses on the bottoms of his feet which cause him moderate to severe pain.[4]

Additionally, Shelton alleges that defendants deprived him of medically necessary wrist

---

[2] Shelton was transferred from Wallens Ridge State Prison to Red Onion State Prison in December 2003. Shelton was prescribed the hard orthopedic boots at Wallens Ridge—a lower security level prison than the super-maximum security level at Red Onion.

[3] Shelton states that he has surgical pins in his left ankle, a tumor on his right foot, and joint deformities in both feet.

[4] Shelton filed a motion for a temporary restraining order, or in the alternative a motion for preliminary injunction, along with his original complaint requesting that prison officials return his hard medical orthopedic boots to him to wear during the course of this litigation on grounds that his medical condition would otherwise worsen. By order of July 26, 2004, the court took under advisement Shelton's motion for a preliminary injunction, ordered defendants to show cause, and denied Shelton's motion for a temporary restraining order. By order of August 30, 2004, the court denied Shelton's motion for a preliminary injunction following defendants' response to his motion. The defendants' responded that the medical department at Red Onion never approved Shelton's boots upon his transfer from Wallens Ridge; Shelton's boots were confiscated pursuant to the prison security policy after he used them as a weapon to destroy the sprinkler head in his cell on December 6, 2003; and that the prison doctor determined that Shelton's boots were not medically necessary because his foot problems could instead be treated by wearing wide, soft soled tennis shoes to prevent him from using his boots as a weapon.

and back braces for his "chronic medical conditions," which are sensory polyneuropathy, tendinitis, writer's cramp, and a bulging and protruding disc in his back. Shelton states that Greene saw him several times over the course of several months for his wrist and back problems, for which Greene prescribed ace bandage wraps and motrin. However, Shelton continued to experience pain. Shelton states that Greene then prescribed wrist and back braces on October 24, 2003, that two nurses[5] informed R. Fleming, Chief of Security, that Greene had ordered the braces, and Fleming informed Greene that he would not allow Shelton to possess the braces at Red Onion. Greene, and the two nurses then wrote to Shelton and "falsely" told him that standard security policies prohibited inmates from possessing wrist or back braces at Red Onion, and Greene rescinded his prescription and informed Shelton that he would not provide the braces to Shelton for security reasons. Therefore, Shelton never received any wrist or back braces. Instead, Greene prescribed motrin and ace bandage wraps, which Shelton found to be inadequate medical treatment. Shelton states that there is no prison policy that prohibits the braces, and that Greene refused to "flex his authority as a physician" over Braxton to ensure Shelton received medical care. Shelton informed Braxton and Schilling in grievances of his medical need for the braces, but neither addressed his needs; and Greene rescinded his order for the braces for non-medical reasons. Shelton claims that these facts show that defendants acted with deliberate indifference to Shelton's serious medical needs for orthopedic boots and wrist and back braces.

Next, Shelton alleges the following facts to support his excessive force and failure to protect claims. On February 22, 2004, Shelton told Correctional Officers J. Stanley and J.

---

[5]These two nurses, Vicky Phipps and J. Oakes, were dismissed as defendants from this action by order of July 26, 2004.

3

O'Quinn that he would like to go outside for recreation. Both defendants "became upset" and threw Shelton back into his cell face-first while he was handcuffed and shackled. Shelton was then placed in ambulatory restraints. As a result of their actions, he suffered a 4 ½ inch laceration on his upper right leg, and hip and shoulder contusions that caused him pain for nine days and for which he sought medical treatment. Shelton also alleges that he was scarred by the contusions. Shelton states that he was seen by medical staff on February 22 and 27, who documented these injuries. Shelton filed grievances concerning the officers' assault upon him and the resulting injuries, however his grievances were rendered unfounded. Shelton states that Braxton and Fleming knew of Stanley's and Oakes' assaultive behavior against inmates.[6] Shelton claims that these facts show that the officers used excessive force upon him and that Braxton and Fleming failed to protect him from assault.

## II.

First, no genuine issue of material fact exists concerning Shelton's deliberate indifference claims. See Fed. R. Civ. P. 56(c) (providing summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law); Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985) (stating that upon a party's motion for summary judgment the court must view the facts, and the inferences to be drawn for those facts, in the light most favorable to the party opposing the motion); see also, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 247- 49 (1986) (stating substantive law identifies

---

[6]Although Shelton expressly stated that he was bringing his failure to protect claims against Braxton and Fleming under state law as opposed to under the Eighth Amendment, the court liberally construed his complaint as raising a federal claim against these defendants. See Mem. Op. July 26, 2004 (Docket entry 19).

4

which facts are material; and only disputed facts that might affect the outcome of a case will properly preclude granting summary judgment).

A plaintiff must show that defendants knew of, and disregarded an objectively serious condition, medical need, or risk of harm in order to allege deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); Mitchell v. Aluisi, 872 F.2d 577, 580 (4th Cir. 1989). Furthermore, a defendant exhibits deliberate indifference if a subjective inference that certain actions, or failure to take corrective action, would subject a plaintiff to unnecessary and significant pain and suffering or would expose a plaintiff to a substantial risk of more serious injury. See Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). Mere malpractice on the part of medical personnel is insufficient to state an Eighth Amendment claim, Estelle, 429 U.S. at 106, and questions of medical judgment are not generally subject to review, Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975).

Shelton fails to allege that he has suffered a serious injury because his various orthopedic conditions are not being medically treated as Shelton believes they should be, or that the lack of additional treatment via wearing hard orthopedic boots and wrist and back braces poses a substantial risk of danger to his health. Shelton was convicted of destruction of property at Red Onion after he destroyed the sprinkler in his cell with his hard orthopedic boots; prison officials then confiscated Shelton's boots for security reasons. Although Shelton denies that he used his boots as a weapon and that his boots should be returned to him because they are medically necessary, prison physicians determined that Shelton does not have a medical need for orthopedic

5

boots. Prison physicians examined Shelton's medical record and x-ray report, and physically examined him in response to his numerous medical requests. Both Dr. Greene, Red Onion physician, and Dr. Stevens, Department of Corrections Chief Physician, prescribed soft, wide soled tennis shoes to treat his foot problems instead of hard orthopedic boots, and determined that his boots were not medically necessary. Additionally, Dr. Greene determined that it was not medically necessary for Shelton to wear wrist and back braces because he had no serious medical condition that necessitated braces, but instead prescribed pain medicine and muscle relaxers for Shelton's complaints of wrist and back pain.[7] Dr. Stevens, confirmed Dr. Greene's medical opinions. Shelton admits that prison physicians examined his orthopedic conditions several times and determined that soft soled tennis shoes and medication were adequate forms of treatment for his orthopedic problems and that he had no medical need for boots or braces. Shelton's allegations state, at most, his own disagreement with medical physicians' opinions that he is not in danger of being seriously injured as a result of not wearing hard orthopedic boots or wrist and back braces. Such allegations do not state constitutional claims. Russell, 528 F.2d at 319. Accordingly, the court finds that Shelton fails to show that medical staff are acting with deliberate indifference as to any serious medical need. Therefore, the court will grant

---

[7] Dr. Greene initially ordered braces for Shelton because Shelton requested them and not because Greene determined that braces were medically necessary for Shelton, nor because braces were the only proper form of treatment for Shelton's orthopedic problems. The order was cancelled after thorough review of Shelton's medical history and a physical exam. Shelton's medical record showed that he had never been prescribed braces, although he had once been issued ace bandage wraps for his wrists. Shelton later requested a new pair of wraps, at which time his wrists were again medically examined by Greene who determined that his wrists were not swollen and that he did not have an orthopedic compression problem, therefore he had no medical need for the wraps either. Thereafter, Greene examined Shelton several times and determined that his medical needs had not changed or conditions worsened.

defendants' motions for summary judgment and will dismiss Shelton's deliberate indifference claims against all defendants.

### III.

Second, no genuine issue of material fact exists concerning Shelton's excessive force and failure to protect claims. See Fed. R. Civ. P. 56(c); Ross, 759 F.2d 355; Anderson, 477 U.S. at 249.

Use of physical force which constitutes "the unnecessary and wanton infliction of pain" by a prison official on an inmate violates the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation and citations omitted). When officials stand accused of the use of excessive force, the key inquiry is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing, Whitley, 475 U.S. at 320-321). In making this determination, the court must balance such factors as the need for the application of force, the relationship between the need and the amount of force actually applied, and the extent of injury inflicted. Id. De minimis injury can be conclusive evidence that the force used was also de minimis and, therefore, not violative of constitutional protections. See Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir. 1994).

Additionally, to state an Eighth Amendment claim of supervisory liability for failure to protect an inmate from violence a plaintiff must show deliberate or callous indifference by prison officials to a specific, pervasive and known risk of harm. Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991); Shrader v. White, 761 F.2d 975, 979 (4th Cir. 1985) (holding that an inmate must suffer "significant mental

7

distress" and danger must be "totally without penological justification"). Furthermore, prison officials cannot be held liable under the Eighth Amendment for failure to protect claims unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

The court cannot find that the officers' alleged actions against Shelton were anything more than a good faith effort to restore order. Shelton alleges that the defendant officers, Stanley and O'Quinn, assaulted him on February 22, 2004 because they were upset that Shelton asked to go outside for recreation, at which time they threw him down on the floor face-first in his cell while he was handcuffed and shackled, and then placed him in ambulatory restraints. Shelton claims that as a result of this assault he received a 4 ½ inch cut on his right thigh which bled a little, and hip and shoulder contusions which caused him pain for nine days and scarred. Defendants responded that the use of force was necessary in order to restrain Shelton to stop his disruptive behavior while he was being transported to recreation, during which he kicked O'Quinn in the chest with both feet and made verbal threats against the officers; and that an internal investigation determined that defendants' use of force was necessary and not excessive. Shelton was medically examined after he was placed in ambulatory restraints and his medical record shows that he had no serious injuries, but did have a small abrasion on his right thigh which was not bleeding.

Viewing the facts as alleged by Shelton in the light most favorable to him, pushing Shelton face-first down on the floor of his cell might have been the use of excessive force. However, the court finds that Shelton has not alleged facts indicating that he suffered more than de minimis injuries. He merely alleges that he received a 4 ½ inch cut on his right thigh that

8

bled, and that he received contusions on his hip and shoulder which caused him pain for nine days and scarred. More importantly, he does not allege that his hip or shoulder were actually broken or that a delay in medical treatment aggravated his pain or injury in any way. Neither does he allege any continuing disability from the injuries. Shelton was medically examined immediately following this incident and a small abrasion on his right thigh, which was not bleeding, was noted as the only injury. Two days later, Shelton was again medically examined in response to his complaints of hip and shoulder pain and the cut on his thigh; and no serious injury was noted in his medical record. The court finds that the de minimis nature of Shelton's injuries is conclusive evidence that the officers did not use excessive force against him on February 22, 2004. Norman, 25 F.3d at 1262.

Similarly, the de minimis nature of Shelton's injuries is conclusive evidence that Braxton and Fleming did not fail to protect Shelton from an excessive risk to Shelton's health or safety. See Farmer, 511 U.S. at 838. Shelton did not allege that Stanley or O'Quinn had previously used excessive force upon him, nor did he allege that either officer had previously threatened to use excessive force upon him or that Braxton and Fleming would have known of such a risk of harm against him. See id. Shelton merely asserts that Braxton and Fleming were aware that Stanley and O'Quinn had used excessive force upon other inmates in the past. Shelton did not allege specific facts that would give either Braxton or Fleming reason to be aware of a specific threat of harm to Shelton from Stanley or O'Quinn. Therefore, Shelton fails to show supervisory liability for failure to protect him from violence because he has not shown deliberate or callous indifference by Braxton or Fleming to a specific, pervasive and known risk of harm. See Pressly, 816 F.2d at 979.

9

Shelton fails to allege that he suffered any serious injury, or that any injury to his thigh, hip or shoulder posed a substantial risk of danger, particularly given that the only injuries he alleges are a small cut on his right thigh and hip and shoulder pain for which he was medically treated with pain medication. The de minimis nature of Shelton's injuries defeats his excessive force and failure to protect claims. Shelton simply has not alleged facts indicating that his injuries were more than de minimus. Accordingly, the court finds that Shelton fails to show that prison officials violated his constitutional rights by using excessive force or by failing to protect him from the use of such force. Therefore, the court will grant defendants' motions for summary judgment concerning Shelton's excessive force and failure to protect claims and will dismiss these claims against all defendants.

### IV.

For the reasons stated, all defendants' motions for summary judgment shall be granted and all Shelton's claims shall be dismissed against all defendants.

**ENTER**: This 29th day of September, 2005.

/s/ James C. Turk
SENIOR UNITED STATES DISTRICT JUDGE

10